IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEAH PLAJER, et al.<br>               *Plaintiffs*,<br><br>v.<br><br>UPPER SOUTHAMPTON MUNICIPAL<br>AUTHORITY, et al.<br><br>               *Defendants*. | CIVIL ACTION<br>NO. 17-3291 |

**PAPPERT, J.**                                                                                        February 20, 2018

## **MEMORANDUM**

Northampton Bucks County Municipal Authority ("NBCMA") and Upper Southampton Municipal Authority ("USMA") have filed Motions to Dismiss Count V of a Complaint filed by Leah and Dan Plajer and Ms. Plajer's parents, Frank and Patricia Cundari. Plaintiffs filed a response to the motion to which NBCMA replied with an accompanying Motion to Strike. Plaintiffs then filed a Response to the Motion to Strike. For the following reasons, the Court grants the Motions to Dismiss, with leave to amend, and denies the Motion to Strike.[1]

---

[1] NBCMA filed its Motion to Dismiss on July 31, 2017 and USMA filed its Motion to Dismiss on August 7, 2017. On October 5, 2017, NBCMA moved to strike Plaintiffs' response to the Motions to Dismiss because it was not filed until September 28, 2017, well beyond the 14 days required for the filing of a response under Rule 7.1 of the Local Rules of Civil Procedure. (NBCMA Reply at 1, ECF No. 9); *see also* E.D. Pa. Local R. Civ. P. 7.1(c) ("Unless the Court directs otherwise, any party opposing [a] motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief. In the absence of timely response, the motion *may* be granted as uncontested . . . .") (emphasis added).

In their Response to the Motion to Strike, Plaintiffs explain that their response to the motions to dismiss was delayed after their counsel was "involved in a serious car accident" on August 2, 2017. (Pls.' Resp. at 1, ECF No. 10.) They assert that their counsel was unsuccessful in reaching counsel for NBCMA, "but, failing to do so, reached out to and successfully communicated with . . . counsel for USMA" who "agreed to allow Plaintiffs an extension in which to file their Reply Brief."

1

Plaintiffs' allege that they "regularly experience raw sewage coming from the main line onto" the property at 840 Bristol Road, Southampton, Bucks County, Pennsylvania. (Compl. ¶ 12, ECF No. 1.) The property belongs to the Cundaris, who do not live there but have granted the Plajers a life tenancy. (*Id.* ¶ 6.) The Plajers have resided at 840 Bristol Road at all times relevant to the Complaint.

Plaintiffs allege that "since at least 1997, by agreement between both Defendants, Defendant NBCMA has been pumping its waste water through the sewage pipes and mains owned by Defendant USMA . . . ." (*Id.* ¶ 7.) They assert that "there is regular infiltration of run-off and storm water into the sewage system pipes owned and operated by USMA, such that during moderate to heavy rain events, the capacity of these pipes becomes greatly stressed, causing substantial pressure to be placed on adjoining pipes that feed individual property owners' outfall pipes." (*Id.* ¶ 9.) More specifically, Plaintiffs contend that "[s]ince 2009, [they] have continually experienced sewer back-ups emanating from the main line controlled by USMA and contributed to by NBCMA," and allege that raw sewage from the main line comes "onto their property, into their home and flow[s] out behind their home to a public body of water." (*Id.* ¶ 12.)

Plaintiffs contend that the "regular events of sewage back-up" "have had a profound impact on the value of Plaintiffs' property, have seriously affected Plaintiffs' quiet enjoyment of their property and . . . have caused severe emotional impact on the lives of the Plaintiffs and their children." (*Id.* ¶¶ 13–14.) Plaintiffs allege that

---

Under the circumstances, the Court declines to grant the Motion to Strike but advises counsel that any future request for an extension or any stipulation relating to the business of the Court should be addressed to the Court in writing. *See* E.D. Pa. Local R. 7.4.

"Defendants have been aware of this situation for at least twenty (20) years . . . ," but have done nothing to remedy the issue other than to "occasionally attempt to 'clean up' the sewage mess after an event occurs." (*Id.* ¶ 15.)

In Count V of their Complaint, Plaintiffs allege that Defendants' conduct is in violation of "§ 1983, the Constitution of the Commonwealth of Pennsylvania, and the Constitution of the United States whereby no citizen may not [sic] be deprived of their rights, including property rights, without due process of law." (*Id.* ¶ 42.) Counts I-IV of the Complaint assert state law claims for trespass, nuisance, inverse condemnation and negligence. (*Id.* ¶¶ 17–39.)

## II

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to survive Defendants' Motions to Dismiss, Plaintiffs' "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating Defendants' motions, the Court must separate the legal and factual elements of Plaintiffs' claims, accept the well-pleaded factual allegations as true and disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The "Court must then determine whether the facts alleged in the complaint are sufficient to show that [a] plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

3

has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III

Section 1983 provides for the imposition of liability on any person who, acting under color of state law, "deprives another of rights, privileges or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983. NBCMA seeks to dismiss Count V of the Complaint for two reasons: (1) It "is little more than a collection of 'labels and conclusions'" that are insufficient to plead an actionable claim under § 1983; and (2) Plaintiffs do not allege facts sufficient to state a plausible claim of municipal liability under § 1983. (NBCMA Mem. at 3–7, ECF No. 2.) USMA "adopts the facts and argument set forth in the motion filed by [NBCMA]." (USMA Mem. at 1, ECF No. 3.)

### A

Defendants first argue that Count V of Plaintiffs' Complaint should be dismissed because Plaintiffs have not sufficiently "allege[d] a violation of a constitutionally protected right." (NBCMA Mot. at 1.) Plaintiffs' Complaint alleges that Defendants' actions are in violation of "§ 1983, the Constitution of the Commonwealth of Pennsylvania, and the Constitution of the United States" and Plaintiffs assert that due process of law is required before a citizen may be deprived of "property rights . . . ." (Compl. ¶ 42.) However, Count V does not otherwise specify the constitutional underpinnings for the Section 1983 claim. (Compl. ¶¶ 40–43.) NBCMA thus argues in its Motion that "Count V is so vague that it is unclear if plaintiffs are attempting to assert a procedural due process claim or a substantive due process claim." (NBCMA

4

Mem. at 4.) NBCMA contends that regardless, Plaintiffs' allegations are insufficient to support a claim for either type of due process violation. (*Id.* at 4–6.)

In response, Plaintiffs point to Count III of their Complaint as "clearly delineat[ing] an inverse condemnation claim, often referred to as a 'taking.'" (Pls.' Opp'n at 2.) They argue that "such a claim is rooted in the principle that a property right is being seized without due process of law . . . ." (*Id.*) NBCMA replies that Plaintiffs' Complaint does not sufficiently allege a claim for a violation of the takings clause of the Fifth Amendment. (NBCMA Reply at 2.)

### i

To the extent that Plaintiffs endeavor to state a claim under § 1983 for deprivation of procedural due process, their allegations are not sufficient to withstand dismissal. To state a procedural due process claim, Plaintiffs must allege that (1) they were deprived of an individual interest included within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to them did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (citation omitted). The Complaint neither specifies what process Plaintiffs were owed nor how it was denied to them. *C.f. Williams v. City of Johnstown*, No. 15-144, 2016 WL 1069100, at *6 (W.D. Pa. Mar. 17, 2016) (explaining that "a federal claim for procedural due process is not ripe for review unless and until a deprivation occurs pursuant to the procedures provided under the local or state code").

### ii

To the extent that Plaintiffs attempt to state a claim under § 1983 for deprivation of substantive due process, their allegations are likewise deficient. "[T]he

5

Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original). "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292 (3d Cir. 1993). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 533 U.S. 833, 849 (1998). The Third Circuit Court of Appeals has explained that "executive action," such as the action (or inaction) of the Defendants alleged in Plaintiffs' Complaint, "violates substantive due process only when it shocks the conscience." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 399–400 (3d Cir.2003); *see also id.* at 402 (explaining that "[a]pplication of the 'shocks the conscience' standard in [the context of land-use disputes] prevents [federal courts] from being cast in the role of a 'zoning board of appeals'"). Scenarios that have been found to qualify as "conscience shocking" in the land use arena include "behavior on the part of a state actor that is predicated upon self-dealing or corruption," "disparate treatment predicated upon racial or ethnic status or a constitutionally protected activity," and "[c]onduct which is intentionally injurious and knowingly committed without justification." *Denino v. Davidson*, No. 10-280, 2012 WL 1448312, at *10 (W.D. Pa. Apr. 26, 2012) (citations omitted).

The Complaint's conclusory allegations that Defendants' actions were "wanton willful, without any regard to the physical emotional or economic well-being of Plaintiffs, and . . . undertaken with callous disregard for the interests and rights of the

6

Plaintiffs" (Compl. ¶ 21, ¶ 26), are insufficient to meet the "conscience shocking" threshold. The same is true of the conclusory allegations that "Defendants have intentionally utilized the property of Plaintiffs for such public purposes they deemed appropriate . . ." and that "Defendants have chosen to utilize the property of Plaintiffs as a remedy for their overflowing raw sewage rather than undertake the expense of creating an alternative piping or offsetting solution to their extensive sewage needs." (Compl. ¶¶ 30–31). Plaintiffs have alleged no specific facts that would support a reasonable inference that either Defendant intentionally allowed the alleged sewage back-up events to continue at 840 Bristol Road. *See United Artists*, 316 F.3d at 394 ("Land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with improper motives.") (internal quotation marks omitted). Plaintiffs have not sufficiently pled a Section 1983 claim for a deprivation of their rights to substantive due process.

### iii

Plaintiffs fare no better with their attempt to save their Section 1983 claim by asking the Court to construe it, apparently in conjunction with Count III's state law inverse condemnation claim, as a "taking." (Pls.' Opp'n at 2.) The Takings Clause prohibits the government from taking private property for public use without providing just compensation. U.S. Const. Amend. V. In Count III of their Complaint—captioned "Inverse Condemnation"—Plaintiffs allege that "Defendants' actions have . . . permanently deprived Plaintiffs from the use and enjoyment of their property." (Compl. ¶ 32.) However, Plaintiffs cannot withstand Defendants' motions simply by

7

arguing that their Section 1983 claim seeks to enforce their rights under the Takings Clause. As Defendants argue, plaintiffs have not sufficiently pled that they have been denied just compensation. (NBCMA Reply at 2.)

"[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). "The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a section 1983 action." *Edelweiss Dev. Corp. v. Cnty. of Susquehanna*, 738 F. Supp. 879, 883 (M.D. Pa. 1988). "Pennsylvania's Eminent Domain Code provides inverse condemnation procedures through which a landowner may seek just compensation for the taking of property." *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001) (citing 26 Pa. Cons. Stat. Ann. §§ 1-408, 1-502(e), 1-609). Plaintiffs have not pled "facts sufficient to allege their use of procedures as set out in the Eminent Domain Code of Pennsylvania . . . ." *Bolick v. Ne. Indus. Servs. Corp.*, 666 F. App'x 101, 105 (3d Cir. 2016) (affirming dismissal of claims as premature where the plaintiffs had not raised claims concerning the demolition of their property pursuant to the procedures available under state law). It follows that they have not sufficiently pled a Section 1983 claim premised upon a violation of the Takings Clause.

## B

Even if Plaintiffs had alleged sufficient facts to establish a constitutional violation, their Complaint cannot withstand dismissal because they have not sufficiently alleged that either Defendant infringed their constitutional rights while

8

acting in furtherance of a municipal policy or custom. "Under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), a city, municipality, or private entity that is a state actor 'may not be held vicariously liable under § 1983 for the actions of its agents' because '[t]here is no respondeat superior theory of municipal liability.'" *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 922 (3d Cir. 2010) (quoting *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006)). "To satisfy the pleading standard, [Plaintiffs] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658–59 (3d Cir. 2009). A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "[A] policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citation and quotation omitted). Defendants may be held liable under *Monell* "only if [their] policy or custom is the 'moving force' behind the constitutional violation." *Sanford*, 456 F.3d at 314.

NBCMA argues that dismissal is warranted because "plaintiffs do not identify a custom or policy to discharge sewage onto plaintiffs property—that alleged result was

9

at best an ancillary consequence of the agreement between NBCMA and USMA."
(NBCMA Mem. at 7.) It also argues that Plaintiffs' allegations are insufficient to establish a basis for *Monell* liability in that Plaintiffs have not alleged "that any NB[CM]A decisionmaker with final authority to establish policy for NBCMA formally adopted 'an official proclamation, policy or edict' that NBCMA discharge its sewage onto plaintiffs' property." (*Id.*)

Plaintiffs acknowledge that *Monell* requires them to allege that a municipal policy or custom caused the alleged constitutional violation by a state actor. (Pls.' Opp'n at 3, ECF No. 8.) In response to Defendants' motions, they contend they have sufficiently alleged a custom. (*Id.* at 4.) They argue that they have done so through: (1) allegations that show that "since 1997, Defendants memorialized this situation and granted the then property owner the right to bring a legal action such as this before the Courts" and (2) allegations that show that "on occasions too numerous to memorialize, Defendants have come onto the property to 'clean up' and address the sewage issue which they have caused." (*Id.*) They claim further that "Defendants have chosen through their actions, customs and policies to allow this situation to proceed for far too many years under their watchful eyes." (Pls.' Opp'n at 4.) The United States Supreme Court has stated that

> [i]f a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct . . . may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989)). But to adequately plead

10

deliberate indifference, more specific allegations are required than those set forth in Plaintiffs' Complaint. Deliberate indifference "is a stringent standard of fault . . . ." *Bryan Cnty.*, 520 U.S. at 410. "A showing of simple or even heightened negligence will not suffice." *Id.* at 407.

Plaintiffs allege generally that they have "continually experienced sewer back-ups" and that they "regularly experience raw sewage coming from the main line onto their property, into their home and flowing out behind their home to a public body of water." (Compl. ¶ 12.) They also allege generally that "Defendants have been aware of this situation for at least twenty (20) years . . . ." (*Id.* ¶ 15.) They claim that Defendants have "occasionally attempt[ed] to 'clean up' the sewage mess after an event occurs (*id.*), but also allege that "at no time has either Defendant offered to provide any tangible remediation or solution which would end the harm and damage being caused the Plaintiffs." (*Id.* ¶ 16.) They need to do more.

Plaintiffs' Complaint does not allege the identity of any individual with decision-making authority at either entity who was even aware of the alleged sewage issues at 840 Bristol Road. *See McTernan*, 564 F.3d at 658–59 (finding the plaintiff's failure to allege conduct by a municipal decisionmaker fatal to his *Monell* claim.) Further, the Complaint includes no specific allegations regarding any alleged sewer back-up incidents. *See Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) (dismissing the amended complaint where it "lack[ed]s any specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom endorsing the" allegedly unconstitutional conduct) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). Because Plaintiffs have not

sufficiently alleged a basis for the imposition of liability under *Monell*, dismissal is required regardless of whether the Complaint sufficiently pleads a constitutional violation.

IV

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing FED. R. CIV. P. 15(a)). To the extent they are able to allege facts sufficient to support a claim against Defendants pursuant to 42 U.S.C. § 1983, Plaintiffs will be granted leave to amend Count V of their Complaint on or before March 6, 2018.[2]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[2] Plaintiffs' dismissed Section 1983 claim provides the basis for the Court's removal jurisdiction. Should Plaintiffs not amend their Complaint to re-allege a claim under Section 1983, the Court will consider whether it should exercise supplemental jurisdiction over their remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a when a district court dismisses all of the claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction).